IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BODEK AND RHODES, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BOB LANIER ENTERPRISES, INC. et al. | : | NO. 15-3421 |

MEMORANDUM

Dalzell, J.                                                                                                                                  February 2, 2016

## I.    Introduction

We consider here plaintiff Bodek and Rhodes, Inc.'s ("Bodek") second motion for default judgment against Bob Lanier Enterprises, Inc. ("Bob Lanier Enterprises"). Bodek brings this action against Bob Lanier Enterprises claiming breach of contract, promissory estoppel, and unjust enrichment after Bob Lanier Enterprises allegedly failed to pay for products it purchased from Bodek. Bob Lanier Enterprises has failed to answer or enter an appearance in this matter, which commenced in June of 2015.

We have diversity jurisdiction over these claims pursuant to 28 U.S.C. § 1332.

For the reasons set forth below, we will grant Bodek's second motion for default judgment against Bob Lanier Enterprises.

## II.    Factual and Procedural History

Bodek commenced this action by filing a complaint on June 18, 2015. The complaint names Bob Lanier Enterprises and Brenda Szpot as defendants and asserts breach of contract,

promissory estoppel, and unjust enrichment claims against Bob Lanier Enterprises.[1]  See Compl. at ¶¶ 2-3, 14-26.  In the complaint, Bodek alleges that Bob Lanier Enterprises failed to pay $148,620.50 in past due balances for product it purchased from Bodek.  Id. at ¶ 17.  In support of this allegation, Bodek attached invoices detailing the past due balance on the defendant's account.  Id. at Ex. B.

After Bob Lanier Enterprises failed to enter an appearance or answer the complaint, Bodek filed its first motion for default judgment.  We denied this motion after finding that Bodek had failed to effectuate service on Bob Lanier Enterprises pursuant to Fed. R. Civ. P. 4.  Order, Bodek, No. 15-3421 (E.D. Pa. Sept. 8, 2015) (docket entry #12).  Bodek subsequently served an agent for Bob Lanier Enterprises, Bernard Schrott, via personal service on November 4, 2015.  See Aff. of David G. Rees (docket entry #16) at 2.

After Bob Lanier Enterprises failed to answer or respond to the complaint after service on November 4, 2015, Bodek filed its second motion for default judgment requesting that we enter judgment against Bob Lanier Enterprises for damages in the amount of $148,620.50, prejudgment interest in the amount of $3,298.15, and reasonable costs and attorney's fees.  See Mot. for Default J. (docket entry #18).  We ordered Bodek to provide supplemental briefing on whether we could exercise personal jurisdiction over Bob Lanier Enterprises, an out-of-state defendant that does not appear to regularly conduct business in Pennsylvania.  Jan. 7, 2016 Order.  Bodek responded with a memorandum arguing that we could exercise personal jurisdiction over Bob Lanier Enterprises by averring that Bob Lanier Enterprises applied for an account with Bodek by faxing an Application for Account to Bodek's Philadelphia headquarters,

---

[1] The complaint also asserts a claim for conversion, but Bodek has chosen not to pursue that claim.  Bodek also brought a claim of breach of personal guaranty against Brenda Szpot, but that claim is not at issue in the motion before us.

Decl. of William Hall at ¶ 5. Bodek also states that Bob Lanier Enterprises purchased apparel and other products from the plaintiff by placing orders via fax, telephone, and the Internet. Id. at ¶ 5. Bodek further avers that when placing orders via fax and telephone, Bob Lanier Enterprises either faxed the orders to Bodek's Philadelphia headquarters or called the headquarters directly. Id. Finally, Bodek argues that all the communications between Bob Lanier Enterprises and Bodek involved Bodek employees working at Bodek's Philadelphia headquarters. Id. at ¶ 11.

### III.    Standard of Review

A party may move for a default judgment against a party who has failed to plead or otherwise defend pursuant to Fed. R. Civ. P. 55. The decision of whether to grant a motion for default judgment "is left primarily to the discretion of the district court." United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194 (3d Cir. 1984). When a plaintiff seeks a default judgment against a party who has failed to plead or defend, a federal district court has the duty to determine whether it has both subject matter jurisdiction over the case and personal jurisdiction over the parties. See D'Onofrio v. Il Mattino, 430 F. Supp. 2d 431, 437 (E.D. Pa. 2006) (citing Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986)).

A court may obtain personal jurisdiction over a defendant only when the complaint and summons are properly served. See Lampe v. Xouth, Inc., 952 F.2d 697, 700-01 (3d Cir. 1991). If the court determines that the plaintiff properly served the defendant, it must then determine whether it has personal jurisdiction over the parties in the case as a default judgment entered without personal jurisdiction is void. See D'Onofrio, 430 F. Supp. 2d at 437. Once it is determined that a court has both subject matter and personal jurisdiction over a case, our Court of Appeals next requires us to consider three factors before entering a default judgment: whether (1) plaintiff will be prejudiced if we deny default, (2) the defendant has a meritorious defense,

and (3) the default was the product of defendant's culpable conduct.  See $55,518.05 in U.S. Currency, 728 F.2d at 195 (articulating the three-part test in terms of setting aside a default judgment); see also Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000) (extending the three-part test to govern grants of default judgment); Spurio v. Choice Sec. Sys., Inc., 880 F. Supp. 402, 404 (E.D. Pa. 1995).

### IV.     Discussion

This motion for default judgment presents three distinct questions: (1) did Bodek properly serve the defendant, (2) does this Court have personal jurisdiction over the defendant, and (3) is it appropriate for us to enter default judgment against the defendant?  Moreover, should we grant Bodek's motion for default judgment, we must inquire as to the appropriateness of Bodek's requested attorney's fees.  We will address these issues separately.

#### A.     Service of Process

A court may obtain personal jurisdiction over a defendant only when the complaint and summons are properly served.  See Lampe v. Xouth, Inc., 952 F.2d 697, 700-01 (3d Cir. 1991). Fed. R. Civ. P. 4(h)(1)(a) provides that a corporation may be properly served by following the laws regarding service of the state where the district court is located or where service is made. Fed. R. Civ. P. 4(h)(1)(b) states that a corporation may also be served by delivering a copy of the summons and complaint to an officer or agent "authorized by appointment or by law to receive service of process."  The Commonwealth of Pennsylvania allows for service to be made to a corporation by handing a copy of the complaint and summons to an executive officer, manager or other person in charge of "any regular place of business or activity of the corporation or similar entity," or to "an agent authorized by the corporation or similar entity in writing to

receive service of process for it." Pa. R. Civ. P. 424. Fed. R. Civ. P. 4(l) requires an affidavit to prove service, and states that failure to prove service does not affect the validity of service.

Here, Bodek personally served Bernard Schrott, an agent authorized by Bob Lanier Enterprises to receive service of process on its behalf. See Aff. of David G. Rees at 2 (docket entry #16). We know that Mr. Schrott is an authorized agent of defendant Bob Lanier Enterprises because he is the company's authorized agent on file with the Wisconsin Department of Financial Institutions. See Search Corporate Records, WISCONSIN DEPARTMENT OF FINANCIAL INSTITUTIONS, https://www.wdfi.org/apps/CorpSearch/Search.aspx (type "Bob Lanier Enterprises" in the search bar; then click "Search Records," and click on the first "BOB LANIER ENTERPRISES, INC." hyperlink) (last visited January 26, 2016). We therefore find that Bodek properly effectuated service of process on the defendant Bob Lanier Enterprises.[2]

**B.     Personal Jurisdiction**

A district court sitting in diversity exercises personal jurisdiction according to the law of the state where it sits. Fed. R. Civ. P. 4(k)(1)(A); O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007). Pennsylvania's long-arm statute permits the exercise of personal jurisdiction to the fullest extent permitted under the United States Constitution. 42 Pa. Cons. Stat. § 5322(b); Pennzoil Prod. Co. v. Colelli & Assoc., Inc., 149 F.3d 197, 200 (3d Cir. 1998) (personal jurisdiction over non-resident defendants authorized to the constitutional limits of the Fourteenth Amendment's Due Process Clause). We therefore inquire whether exercising personal jurisdiction over a defendant is constitutional. Due Process requires a non-resident defendant to have certain minimum contacts with the forum state such that bringing the

---

[2] This instruction is necessary given Bodek's failure to properly serve the defendant on its first attempt, which led us to dismiss without prejudice Bodek's first motion for default judgment. See docket entry #12.

defendant into court does not offend traditional notions of fair play and substantial justice. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413 (1984) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

First, we must determine whether a defendant's contacts with the forum state are sufficient to support general jurisdiction. Pennzoil Products Co., 149 F.3d at 200. A party subject to general jurisdiction can be brought into court regardless of whether the subject matter of the cause of action has any connection to the forum state. Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992). A party is subject to general jurisdiction when it has continuous and systematic contacts with the forum state. Provident Nat. Bank v. California Federal Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987) (a showing of minimum contacts is insufficient to establish general jurisdiction as plaintiff must show non-resident defendant's contacts are continuous and substantial).

Should we lack general jurisdiction, we must next inquire as to whether we have specific jurisdiction. Specific jurisdiction exists when a plaintiff's claim is related to, or arises out of, a defendant's contacts with the forum state. Dollar Sav. Bank v. First Sec. Bank of Utah, N.A., 746 F.2d 208, 212 (3d Cir. 1984). The relationship of the defendant, the forum state, and the litigation creates the foundation for specific jurisdiction. Id. We must ask whether a defendant has purposely availed itself of the forum state by invoking the benefits and protections of its laws, and whether a defendant's conduct and connection with the forum state are such that it should reasonably anticipate being brought into court there. Farino, 960 F.2d at 1222. A single contact creating a substantial connection with the forum state can be sufficient to support exercising personal jurisdiction over a defendant. Miller Yacht Sales, 384 F.3d 93, 96 (3d Cir. 2004).

To determine whether we have specific jurisdiction, we must ask three related questions. First, has the defendant purposefully directed its activities at the forum state? D'Jamoos ex rel. Estate of Weinegroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009). Second, does the litigation arise out of, or relate to, at least one of those activities? Id. And, third, if the first two requirements have been met, does exercising specific jurisdiction comport with fair play and substantial justice? Id.

If there are sufficient minimum contacts to support personal jurisdiction, we must inquire whether exercising that jurisdiction comports with fair play and substantial justice. Farino, 960 F.2d at 1222. We must evaluate fairness based on several factors, including the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)).

Though a contract may provide the basis for the proper exercise of personal jurisdiction, a contract alone does not automatically establish sufficient minimum contacts in the opposing party's home forum. Grant Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993) (quoting Burger King, 471 U.S. at 478). The Court may consider contract negotiations and mail and telephone communications the defendant had with the forum state -- all of which may count toward the minimum contacts needed to support in personam jurisdiction. Id.

Our Court of Appeals instructs us that:

> In contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation

7

> of the contract or its breach. Parties who reach out beyond their state and create continuing relationships and obligations with citizens of another state are subject to the regulations of their activity in that undertaking. Courts are not reluctant to find personal jurisdiction in such instances. Modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.

General Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (internal quotations, citations, and brackets omitted).

Where the parties in a business transaction have long-term relationships conducted electronically, however, actual territorial presence is less determinative of whether we have personal jurisdiction. The important consideration is "the intention to establish a common venture extending over a substantial period of time," not which party initiated the relationship. Id. at 151. We are obliged to consider "the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing" as we determine whether we have in personam jurisdiction. Remick v. Manfredy, 238 F.3d 248, 256 (3d Cir. 2001).

In Streamline Bus. Servs., LLC v. Vidible, Inc., 2014 WL 4209550, at *10 (E.D. Pa. Aug. 26, 2014), Judge Baylson found personal jurisdiction where "[b]oth parties maintained constant and consistent communication via Skype, email and telephone communications during prior negotiations and in performance of the contract." Defendant also made payments into plaintiff's Pennsylvania bank account and knew that plaintiff was a Pennsylvania resident during contract negotiations and that it would conduct its business in Pennsylvania. Id.

By contrast, in Rotondo Weinreich Enter., Inc. v. Rock City Mech., Inc., 2005 WL 119571, at *4 (E.D. Pa. Jan. 19, 2005), Judge Padova found it "significant that the parties did not intend to establish a common venture extending over a substantial period of time," where the

contract was for a one-time project that lasted less than a year.  There, a lack of physical presence in Pennsylvania was significant, even in a contract case, because there was no deliberate assumption of long-term obligations.  Id. at *5.  Given the absence of such a long-term relationship, and the minimal electronic contacts with the Pennsylvania plaintiff, Judge Padova held there were insufficient contacts to ground specific jurisdiction related to the contract at issue.  Id. See also Guzzi v. Morano, 2011 WL 4631927, at *7 (E.D. Pa. Oct. 6, 2011) (Buckwalter, J.) (reviewing cases and agreeing that contract negotiations leading to a long-term relationship beyond a single transaction gave rise to minimum contacts); Cohen, Seglias, Greenhall, Pallas, & Furham, P.C. v. Hessert Constr. PA, LLC, 2011 WL 382571, at *7 (E.D. Pa. Feb. 4, 2011) (Baylson, J.) (finding personal jurisdiction where defendants solicited and initiated a business relationship with a Pennsylvania entity that lasted ten years and included extensive interstate communications and many payments made into Pennsylvania).  Where a Court has found interstate communication to ground specific jurisdiction, it is generally in conjunction with an actual appearance by the non-resident defendant in the forum state and continuing obligations between the parties.  See Pulte Home Corp. v. Delaware Land Assoc., L.P., 2008 WL 2168788, *3-4 (E.D. Pa. May 22, 2008) (Giles, J.).

  We cannot exercise general jurisdiction over Bob Lanier Enterprises, an out-of-state corporation that does not appear to sell its merchandise in Pennsylvania.  But, we find that we have specific jurisdiction over the defendant.  First, Bob Lanier Enterprises purposely directed its activities to Pennsylvania.  It applied for an account with Bodek by faxing an Application for Account to Bodek's Philadelphia headquarters.  Decl. of William Hall at ¶ 5.   It purchased apparel and other products from the plaintiff by placing orders via fax, telephone, and over the Internet.  Id. at ¶ 5.  When placing orders via fax and telephone, Bob Lanier Enterprises either

9

faxed the orders to Bodek's Philadelphia headquarters or called the headquarters directly. Id. This relationship began in 2008 and continued until some point in 2014 or 2015 when Bob Lanier Enterprises allegedly stopped making payments on products it ordered from Bodek. These are precisely the type of activities our Court of Appeals described when noting that personal jurisdiction exists when "[p]arties . . . reach out beyond [their] state and create continuing relationships and obligations with citizens of another state." General Elec. Co., 270 F.3d at 150. More importantly, it is clear that Bob Lanier Enterprises had "the intention to establish a common venture extending over a substantial period of time." Id. at 151.

This long-term obligation is analogous to the conduct of the defendants in Guzzi, where our colleague Judge Buckwalter found that contract negotiations leading to a long-term relationship beyond a single transaction gave rise to minimum contacts. 2011 WL 4631927, at *7. It is also similar to Cohen, where our colleague Judge Baylson found personal jurisdiction where the defendants had solicited and initiated a business relationship with a Pennsylvania entity that lasted ten years and included extensive interstate communication. 2011 WL 382571, at *7. And, notably, the continuing relationship between the parties differentiates this matter from Rotondo, where Judge Padova held that there was insufficient minimum contacts to establish personal jurisdiction since the contract in question was for a one-time project and the parties "did not intend to establish a common venture extending over a substantial period of time." 2005 WL 119571, at *4. In establishing a continuing relationship with Bodek, we hold that Bob Lanier Enterprises purposely availed itself of the laws of the Commonwealth of Pennsylvania and there are sufficient minimum contacts between Bob Lanier Enterprises and the Commonwealth to support our having personal jurisdiction.

We must now ask whether the litigation arises out of or relates to the activities Bob Lanier Enterprises directed towards the Commonwealth and, if so, whether exercising personal jurisdiction will comport with the notions of fair play and substantial justice. This matter clearly arises from the activities that Bob Lanier Enterprises directed towards the Commonwealth, as it alleges a breach of the contract entered into by Bodek and Bob Lanier Enterprises after Bob Lanier Enterprises faxed an Application for Account to Bodek's Philadelphia headquarters.

As to our inquiry of whether exercising jurisdiction comports with fair play and substantial justice, we evaluate the factors laid out by our Court of Appeals -- including the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. Farino, 960 F.2d at 1222. First, the defendant here has failed to answer, and while this may indicate that it may be a burden for Bob Lanier Enterprises to defend this action in Pennsylvania, the defendant's complete and utter silence in this matter signals to us that it simply does not wish to litigate the matter at all. Second, Pennsylvania has a significant interest in adjudicating the dispute, as a Pennsylvania plaintiff is claiming that an out-of-state defendant breached a contract entered into under the laws of the Commonwealth of Pennsylvania. Third, Bodek has a significant interest in obtaining convenient and effective relief as the defendant has allegedly failed to pay nearly $150,000 in past due balances. Fourth, the interstate judicial system has a palpable interest in this case being resolved as efficiently as possible, which weighs in favor of our exercising personal jurisdiction. Finally, the shared interest of the several States in furthering fundamental substantive social policies seems to also favor exercising personal jurisdiction.

We hold that Bob Lanier Enterprises has significant minimum contacts with the Commonwealth to support personal jurisdiction. It has purposely directed its activities towards Pennsylvania, this litigation arises out of those activities, and exercising personal jurisdiction comports with the notions of fair play and substantial justice. We therefore find that we have personal jurisdiction over the defendant in this matter.

### C. Default Judgment

As we have both subject matter and personal jurisdiction over this case, we must determine whether default judgment is appropriate. Our Court of Appeals requires us to consider three factors before entering a default judgment: whether (1) plaintiff will be prejudiced if we deny default, (2) the defendant has a meritorious defense, and (3) the default was the product of defendant's culpable conduct. See $55,518.05 in U.S. Currency, 728 F.2d at 195 (articulating the three-part test in terms of setting aside a default judgment); see also Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000) (extending the three-part test to govern grants of default judgment); Spurio v. Choice Sec. Sys., Inc., 880 F. Supp. 402, 404 (E.D. Pa. 1995).

Bodek has stated a claim upon which relief can be granted in its breach of contract claim. The elements of a breach of contract claim are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages. See McShea v. City of Phila., 995 A.2d 334, 340 (Pa. 2010). Bodek has averred that it entered into a long-term contract with Bob Lanier Enterprises after the defendant "executed an Application for Account" with Bodek in 2008. See Compl. at ¶ 8 and Ex. A. It has also stated that the defendant has breached this contract by failing to pay Bodek a sum of $148,620.50 for products delivered between July and December of 2014. Id. at ¶ 9. Finally, Bodek asserts that it has suffered damages -- notably the loss of $148,620.50 -- due to

this breach of contract.  Id. at ¶ 17.  Thus, we find that Bodek has stated a claim upon which relief can be granted.³

We next examine the Chamberlain factors to determine the appropriateness of default judgment in this matter.  One of the factors is that the plaintiff will be greatly prejudiced if we deny default.  Bodek is attempting to collect on allegedly past due payments from Bob Lanier Enterprises.  The amount in question is not trivial and, should we decline to enter default judgment, Bodek will have no recourse against Bob Lanier Enterprises in this Court.  The first factor therefore weighs in favor of granting default judgment.  Second, as Bob Lanier Enterprises has failed to answer or appear, it is unclear if it has a meritorious defense, and thus the second factor weighs neither in favor nor against default judgment.  Finally, the sought-after default appears to be the product of defendant's culpable conduct, as Bob Lanier Enterprises has failed to respond to the complaint in this case despite being properly served over two months ago.  The third factor therefore weighs in favor of granting default judgment.  As two of the three factors weigh in favor of default judgment, with the other factor weighing neither in favor of nor against default judgment, we will grant Bodek's motion for default judgment.

       **D.**     **Award of Damages, Prejudgment Interest, and Attorney's Fees and Costs**

We must now decide whether to award the damages, prejudgment interest, and attorney's fees and costs Bodek seeks.  Fed. R. Civ. P. 55(b)(2) provides that a court may "conduct hearings or make referrals…when, to enter or effectuate judgment, it needs to …determine the amount of damages."  But, a hearing is not required when "the amount claimed is liquidated or capable of

---

³ Bodek also brought claims of promissory estoppel and unjust enrichment against Bob Lanier Enterprises.  But, since we find that Bodek has stated a breach of contract claim upon which relief can be granted, it is unnecessary for us to perform a similar analysis on the other two counts.

13

ascertainment from definite figures contained in the documentary evidence and detailed affidavits submitted by Plaintiff." Amresco Fin. I L.P. v. Storti, 2000 WL 284203, at *2 (E.D. Pa. Mar. 13, 2000) (Kauffman, J.); see also Durant v. Husband, 28 F.3d 12, 15 (3d Cir. 1994) (stating that a court may conduct a hearing if it is necessary to determine the amount of damages).

    Bodek has provided us with the invoices detailing Bob Lanier Enterprises alleged missed payments for delivered products. See Compl. at Ex. B. Therefore we have documentary evidence of the liquidated damages Bodek claims in this matter and a hearing is simply not necessary for us to determine the amount of damages. As we have confirmed that Bodek's claim of damages matches the invoices attached to its complaint, we will enter judgment for Bodek and against Bob Lanier Enterprises in the amount of $148,620.50.

    Bodek also requests prejudgment interest at the rate of 6%. "Under Pennsylvania law, the award of prejudgment interest in a contract action is not discretionary; it is a legal right to which a prevailing party is entitled." ECEM European Chemical Marketing B.V. v. Purolite Co., 451 F. App'x 73, 79 (3d Cir. 2011) (citing Fernandez v. Levin, 548 A.2d 1191, 1193 (Pa. 1988)). And, "[w]here 'damages are known or…ascertainable through mathematical calculations,' prejudgment interest is limited to the statutory rate of 6% per annum." Id. (quoting Spang & Co. v. USX Corp., 599 A.2d 978, 984 (Pa.Super. Ct. 1991); see also 41 Pa.C.S. § 202.

    Here, Bodek has requested prejudgment interest in the amount of $3,298.15. It calculated this amount "starting from March 17, 2015, the date on which payment for the most recent of the Invoices was due, through July 30, 2015, the date [Bodek] filed its first Request for Entry of Default Judgment." Pl.'s Mem. Supp. Default J. at 11. We find this calculation to be accurate and warranted, and will therefore award Bodek prejudgment interest in that amount.

Finally, Bodek requests an award for attorney's fees and costs.  In Pennsylvania, attorney's fees can be awarded to a prevailing party only when "provided for by statute, or when clearly agreed to by the parties."  Sloan & Co. v. Liberty Mutual Ins. Co., 653 F.3d 175, 186 (3d Cir. 2011) (quoting Fidelity-Phila. Trust Co. v. Phila. Transp. Co., 173 A.2d 109, 113 (Pa. 1961)). The Application for an Account submitted to Bodek by Bob Lanier Enterprises contains attorney's fee provisions.  See Compl. at Ex. C.  We therefore find that an award for attorney's fees and costs is appropriate.  Bodek states that it incurred attorney's fees in the amount of $3,831.00 and costs totaling $1,034.20 in this matter.  Lawall Decl. at ¶ 8.  The costs are well-documented, and we will award Bodek the amount it requests as to costs.

But we decline to enter an award for the requested amount of attorney's fees.  Once a court decides that an award of attorney's fees is appropriate, it must determine a reasonable amount for those fees.  We do this by using the lodestar method, where we multiply "the number of hours reasonably expended by a reasonable hourly rate."  Evans v. Port Authority of New York and New Jersey, 273 F.3d 346, 358 (3d Cir. 2001) (quoting Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 176 (3d Cir. 2001)).  Here, Bodek claims that a paralegal at the office of its counsel worked a total of 9.8 hours on this matter, and that the paralegal has an hourly billing rate of $255.  It also states that an attorney worked two hours on this case and bills at a rate of $666 per hour.  We find that the total number of hours worked is reasonable.  To determine if the listed hourly billing rates are reasonable, we turn to the Community Legal Services's attorney's fee schedule.  See Attorney Fees, COMMUNITY LEGAL SERVICES (Sept. 12, 2014), http://www.clsphila.org/about-cls/attorney-fees.  We, like the Third Circuit, approve of CLS's fee schedule as a barometer for reasonable legal rates.  See Maldonado v. Houstoun, 256 F.3d 181, 187-88 (3d Cir. 2001).  The top billing attorney rate on CLS's fee schedule is $650,

below the $666 listed for the attorney in this matter. Moreover, the top paralegal hourly rate is $165, well below the hourly rate of $255 for the paralegal that worked on this matter. While we find no reason to doubt Bodek's assertion that the rates listed are those charged by its firm, we find they are unreasonable, especially given the relative lack of legal complexity presented by this dispute. We will therefore calculate the attorney's fees using $650 as the hourly rate for the attorney in this case and $200 as the hourly rate for the paralegal. Using those figures in our lodestar analysis, we calculate that the appropriate award for attorney's fees in this matter is $3,260.00, and we will award Bodek that amount.

## V.  Conclusion

We find that Bodek has properly served defendant Bob Lanier Enterprises, that we have personal jurisdiction over the defendant, and that it is appropriate for us to enter default judgment. We will therefore enter judgment in favor of plaintiff Bodek and against defendant Bob Lanier Enterprises and award the plaintiff damages of $148,620.50, prejudgment interest in the amount of $3,298.15, attorney's fees totaling $3,260.00, and costs in the amount of $1,034.20.

BY THE COURT:

  /s/ Stewart Dalzell, J.
Stewart Dalzell, J.